IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

JUSTIN M. LOPEZ                                                                                        PLAINTIFF

VERSUS                                                          CIVIL ACTION NO. 1:03cv122WJG-JMR

CITY OF BILOXI, MISSISSIPPI and A.J.
HOLLOWAY, in his Official Capacity as
Mayor for the City of Biloxi, Mississippi                                                 DEFENDANTS

MEMORANDUM OPINION

This matter is before the Court on the motion of the Defendants, City of Biloxi, Mississippi [Biloxi] and A.J. Holloway, in his official capacity, for new trial [99-1], or in the alternative for remittitur on damages, for judgment as a matter of law, and motion for stay of execution of judgment. The Court, having reviewed the briefs, finds as follows.

Standard of Review

"Judgment as a matter of law is proper after a party has been fully heard by the jury on a given issue, and 'there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue.'" *Foreman v. Babcock & Wilcox Co.,* 117 F.3d 800, 804 (5th Cir. 1997) (quoting FED. R. CIV. P. 50(a)). "A trial court should not grant a new trial on evidentiary grounds unless the verdict is against the great weight of the evidence." *Pryor v. Trane Co.,* 138 F.3d 1024, 1026 (5th Cir. 1998). The movant must make a "clear showing" of an "absolute absence of evidence to support the jury's verdict." *Whitehead v. Food Max of Miss., Inc.,* 163 F.3d 265, 269 (5th Cir. 1998) (citations omitted).

<u>Findings</u>

On April 27, 2005, following a trial on the merits, the jury found in favor of Lopez determining that Biloxi violated Lopez's First and Fourteenth Amendment rights and awarding damages in the amount of $55,000 to Lopez. (Ct. R., Docs. 86, 90.) As a result of these findings, the parties filed post-trial motions.

Plaintiff's motion for equitable relief asserts that in light of the jury's findings in this case, and the prayer for relief contained in the complaint, the Court should order Biloxi to reinstate Lopez to the position of firefighter with seniority dating back to October 11, 2000, the date the first applicants were hired from the July 2000 eligible list. (Ct. R., Doc. 89, p. 3.)

Defendants argue in their motion for new trial that Plaintiff should not have presented his damages on the morning of the second day of trial of this matter, because an interrogatory was presented to Lopez in January 2004, requesting the amount of damages, which was never answered. (Ct. R. Doc. 10, p. 2.) Defendants contend that they were surprised by Lopez's testimony in regard to damages because there was no time to prepare to counter the testimony. (*Id.*, p. 3.) Defendants assert that the late production of the damages information should result in exclusion of the damages evidence for failure to comply with Uniform District Court Rule 26.1(A)(3). Lopez must establish that the failure to produce the information was harmless or that substantial justification existed to allow the damages findings to stand, according to Defendants.

Defendants characterize Lopez's testimony regarding his lost wages as that of an expert. (Ct. R., Doc. 100, pp. 3-4.) Defendants assert that a motion to compel the production of the salary tables should have been sought during discovery, and or that other methods of discovery may have produced the information sought, according to Defendants. (*Id.*, pp.4-5.) Defendants

-2-

insist that the material was a matter of public record that Plaintiff could have obtained by other methods rather than relying on the answer to an interrogatory.

According to Defendants, Plaintiff's damages presentation was speculative and unsupported by the evidence. (*Id.*, p. 6.) Defendants further assert that there was no proof in the record that Lopez could or would pass the tests which were necessary to advance in paygrades as claimed by Plaintiff. (*Id.*) Accordingly, Defendants assert that there was no admissible evidence before the jury to allow an award of $55,000 to Lopez. (*Id.*, p. 7.)

During trial, Lee Ann Dorsey, a vocational rehabilitation expert designated by Defendants, testified that the yearly wage for a firefighter during 1999/2000 was $25-30,000. (Dorsey Trial Test.) A firefighter II would earn $31,468, which would be a potential step for Lopez to reach after two years experience. (*Id.*) Defendants moved for a directed verdict at the close of trial arguing that any proof of lost wages was speculative. (Tr. Test.) That motion was overruled.

Certain stipulations were entered prior to trial, including an offering from Teresa Dobbs, a payroll clerk for the City of D'Iberville, Mississippi, [D'Iberville] where Lopez worked as a firefighter, in which Dobbs indicated that Lopez earned $21,500 during 2000 and 2001. The parties also stipulated to exhibits P1-25 and D1-22. (Tr. Test.) Part of the stipulated exhibits included the transcripts of tapes. (*Id.*)

In addition, certain *in limine* motions were filed prior to trial, including objections by Defendants to the use of the tape transcript, and any lost wage testimony from Lopez. (Ct. R., Docs. 51, 53, 55, 77.) These motions were denied, and the Court found that Lopez could testify concerning his past work record and income. (Ct. R., Doc. 83, p. 4.) Accordingly, Lopez

testified regarding his earnings and both Dorsey and Dobbs testified about wages as a firefighter and wages in other relevant work areas that Dorsey opined Lopez was suited to perform.  (Tr. Test.)

I.      Adequacy of Evidence of Lost Wages

The amount of damages to be awarded to an injured litigant is primarily a question of fact for the jury.  *Boyd v. Smith,* 390 So.2d 994 (Miss. 1980); *New Orleans & NE RR v. Weary,* 217 So.2d 274 (Miss. 1968); *Jones v. Welford,* 215 So.2d 240 (Miss. 1968).  A jury's verdict will not be disturbed unless that verdict is "so grossly excessive as to shock the conscience, or evidence bias, passion or prejudice on the part of the jury."  *Edwards v. Ellis*, 478 So.2d 282, 289 (Miss. 1985); *GMAC v. Layton*, 353 So.2d 749 (Miss. 1977).

Damage awards are overturned when the circumstances involve "exceptional cases where such awards are so gross as to be contrary to 'right reason.' "  *Johnson v. Offshore Exp., Inc*., 845 F.2d 1347, 1356 (5th Cir. 1988) (*quoting Bartholomew v. CNG Producing Co.,* 832 F.2d 326, 331 (5th Cir. 1987)).  In addition, damage awards are reviewed not by comparing verdicts in similar cases, but by looking at the facts of each case.  *Winbourne v. Eastern Airlines, Inc.,* 758 F.2d 1016, 1018 (5th Cir. 1984), *cert. denied,* 474 U.S. 1036 (1985).

The Court finds that this case does not involve an award which is so gross as to be shocking.  Not only Lopez's testimony, but the testimony of the expert hired by Defendants to provide wage earning testimony for Lopez established that Lopez had the potential to earn about $25,000 a year for the time involved in this case.  The Court, therefore, concludes that there is no reason to overturn the jury's award or to diminish the same for lack of evidence to support the verdict.  *See City of Jackson v. Locklar,* 431 So.2d 475 (Miss. 1983).

II.   Mitigation of Damages

Defendants further argue that the jury ignored the mitigation of damages instruction when the jury awarded $55,000 to Lopez in damages. The jury instructions in this case included an instruction regarding mitigation of damages which provided as follows:

> A person who claims damages resulting from the wrongful act of another has a duty under the law to use reasonable diligence to mitigate—to avoid or minimize those damages. If you find the defendant is liable and the plaintiff has suffered damages, the plaintiff may not recover for any item of damage which he could have avoided through reasonable effort. If you find by a preponderance of the evidence the plaintiff unreasonably failed to take advantage of an opportunity to lessen his damages, you should deny him recovery for those damages which he would have avoided had he taken advantage of the opportunity.
>
> You are the sole judge of whether the plaintiff acted reasonably in avoiding or minimizing his damages. An injured plaintiff may not sit idly by when presented with an opportunity to reduce his damages. He is not required, however, to exercise unreasonable efforts or incur unreasonable expenses in mitigating the damages. The defendant has the burden of proving the damages which the plaintiff could have mitigated. In deciding whether to reduce the plaintiff's damages because of his failure to mitigate, you must weigh all the evidence in light of the particular circumstances of the case, using sound discretion in deciding whether the defendant has satisfied his burden of proving that the plaintiff's conduct was not reasonable.

The jury is presumed to have followed the trial court's instruction concerning mitigation of damages, and there is no evidence that the jury did otherwise. *United States v. Fletcher,* 121 F.3d 187, 197 (5th Cir. 1997) (citing *Zafiro v. United States,* 506 U.S. 534, 540-1 (1993)). Dorsey testified that Lopez's wage earning capacity for 1999 included average wages of $26,065; $25,617 and $25,273, to name a few. (Tr. Test.) She stated that in 2004, average wages were $29,560; $32,000 and $25,400 for an individual with Lopez's qualifications. (*Id*.) She also testified that during the year 1999-2000, a firefighter II (the position which Lopez sought) would have earned $31,468. (*Id*.) She opined that Lopez had no lost earnings because he did not take

other available employment equal to or greater than a firefighter's salary. (*Id*.) These figures would permit a finding of an award in the range of $75,000-80,000, without testimony regarding Lopez's earning in other jobs during the same time frame. The Court concludes that the jury followed the mitigation of damages instruction in determining the award in this case. *Parker v. Randolph*, 442 U.S. 62, 73 (1979) ("A crucial assumption underlying that system is that juries will follow the instructions given them by the trial judge."), *overruled on other grounds by Cruz v. New York,* 481 U.S. 186 (1987); *Galvan v. Cockrell*, 293 F.3d 760, 765-6 (5th Cir. 2002). The Court, therefore, concludes that there is no basis to grant Defendants' motion for a remittitur on damages and that the motion should be denied, based on the jury findings in this case.

III.     Admission of Tape Transcripts into Evidence

The tapes should not have been admitted in the trial because those tapes unduly prejudiced the testimony in favor of Plaintiff, according to Defendants. The Court has previously considered this and, in its discretion, determined that the tapes and transcripts were admissible. (Ct. R., Docs. 67, 83.) Furthermore, the parties stipulated to the admissibility of the transcripts during trial. (Tr. Test.) The Court finds no reason to grant a new trial based on this argument.

IV.     Due Process Claim

Defendants maintain that Plaintiff failed to prove his Fourteenth Amendment Due Process claim because there was no proof offered that he was denied a fair application process. Due process requires that an individual be accorded notice and the opportunity to rebut the charges against him before incurring deprivation of a protected interest. *See, e.g., Mullane v. Hanover Trust Co.,* 339 U.S. 306, 313 (1950). The minimum federal constitutional requirement is only that the party deprived of a property right have " 'an *opportunity* [for a hearing] . . .

granted at a meaningful time and in a meaningful manner,' for [a] hearing appropriate to the nature of the case," as well as "a meaningful opportunity to be heard."  *Boddie v. Connecticut,* 401 U.S. 371, 378-9 (1971) (citations omitted); *Ferguson v. Thomas,* 430 F.2d 852, 856-8 (5th Cir. 1970); *Shawgo v. Spradlin*, 701 F.2d 470, 480 (5th Cir. 1983).

To show a due process violation in the public employment context, Plaintiff must first show that he had a legally recognized property interest at stake.  *See State of Texas v. Walker,* 142 F.3d 813, 818 (5th Cir. 1998); *Spuler v. Pickar,* 958 F.2d 103, 107 (5th Cir. 1992) (stating that a prerequisite to a substantive due process claim is the establishment of a constitutionally protected property right).  Such a showing must be made by reference to state law.  "The Constitution does not create property interests; 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.' " *Schaper v. City of Huntsville,* 813 F.2d 709, 713 (5th Cir. 1987), (*quoting Board of Regents v. Roth,* 408 U.S. 564, 577 (1972)); *Lollar v. Baker*, 196 F.3d 603, 607 (5th Cir. 1999).

Lopez contends that his Fourteenth Amendment due process rights were violated when he was not considered for the firefighter position with the City of Biloxi.  As asserted in the complaint, Lopez claims he had a recognized property interest, under Mississippi law, in the firefighter position with the City of Biloxi.  (Ct. R., Doc. 1, pp. 4-5.)  None of the testimony at trial establishes how Lopez could have a property interest in a job he never held.  *Lollar*, 196 F.3d at 608.  The Court, therefore, finds that Defendants' motion regarding any claim for damages based on a Due Process claims should be granted.  The Court will analyze what effect, if any, this determination makes on the jury's damage award to Lopez.

The jury in this case bundled the damages it awarded, thus, the Court must determine if it is necessary to extract from the jury's damages award the damages relating to the Due Process claim. Compensatory damages in section 1983 cases remedy only *actual injuries* caused by a deprivation of constitutional rights, and not "the abstract 'value' of . . . due process and First Amendment rights." *Memphis Comm. Sch. Dist. v. Stachura,* 477 U.S. 299, 313 (1986). The Court must consider the propriety of the First Amendment claim and the award for the injuries related to any First Amendment violation to determine whether the damages should be reduced, or eliminated altogether.

V.   First Amendment Claim

Defendants argue that Lopez did not prove a First Amendment claim. Plaintiff must establish certain elements to establish a First Amendment retaliation claim under section 1983 including the following:  (1) engaging in a protected activity; (2) suffering an adverse employment action; (3) a causal connection between the two; and (4) the execution of a city policy causing the adverse action. *Sharp v. City of Houston,* 164 F.3d 923, 932 (5th Cir. 1999); *Correa v. Fischer,* 982 F.2d 931, 933 (5th Cir. 1993). Lopez bears the initial burden of showing that the constitutionally protected activity (affiliation with an opposing candidate to the mayor's political campaign) was a substantial or motivating factor in decision not to hire him to the firefighter position. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977); *see Kennedy v. Tangipahoa Parish Library Bd. of Control,* 224 F.3d 359, 366 (5th Cir. 2000). After the jury determines whether plaintiff's protected speech was a substantial or motivating factor in the adverse employment decision, the plaintiff must have proven that the supervisor was aware or likely to be aware of the speech. Defendants must also show by a preponderance of the

evidence that they would have come to the same conclusion in the absence of the protected conduct. *Mt. Healthy,* 429 U.S. at 287; *Beattie v. Madison County Sch. Dist*., 254 F.3d 595, 605, n. 3 & 18 (5th Cir. 2001).

The testimony at trial showed that Mayor Holloway has the final say on each appointment to the fire department.  (Tr. Test.)  The Lopez family was involved in the political campaigns of the candidates opposing Holloway in the mayoral election in the City of Biloxi.  (Tr. Test.)  Ann Marie Lopez testified that Holloway saw her husband, Curtis Lopez [Curtis] (Justin's father, also a Biloxi firefighter) and herself wearing T-shirts in support of the opposing candidate.  (*Id*.) David Roberts, director of the Biloxi fire department, testified that Holloway told him to fire Curtis because of an incident at a Biloxi polling place.  (*Id*.) Roberts testified that Holloway had animosity towards Curtis as a result of the incident.  (*Id*.)  As director, Roberts was responsible for determining a list of hires for the fire department.  (*Id*).

Roy Benefield, the deputy chief of training at the Biloxi fire department, who administered and scored the civil service exam taken by all seeking consideration for hire in the fire department, testified that Justin Lopez's score was 78.21, but it was reported as 69.  (*Id*.)  It appeared that all candidates were improperly scored.  (*Id*.)  Benefield testified that Roberts said Justin would not be hired to the firefighter position.  (*Id*.)

Holloway testified that he had seen Justin at a political function supporting the candidate opposing Holloway.  (*Id*.)  He agreed that he told Roberts to fire Curtis because of his political activities but later changed his mind about the decision.  (*Id*.)  Although Holloway testified that he was not aware that Justin was a candidate for the firefighter position, he clarified that he does not receive the lists or applications as they are submitted.  (*Id*.)  Holloway testified that the

director (Roberts) brings the final list to him for approval; Holloway does not choose any of the candidates prior to issuing his approval. (*Id.*) Based on this evidence, the jury reasonably found that Justin was not hired in retaliation for his political speech. *Wiggins v. Lowndes County, Miss.*, 363 F.3d 387, 392 (5th Cir. 2004). The Court concludes there was sufficient evidence present in this case to support the First Amendment claim and the resulting award for damages based on that claim.

"Back pay" commonly refers to the wages and other benefits that an employee would have earned if the unlawful event that affected the employee's job related compensation had not occurred. *See Phelps Dodge Corp. v. NLRB,* 313 U.S. 177, 197 (1941). The equitable remedy of back pay is required in the context of adverse personnel actions which occur as retaliation for the exercise of first amendment freedoms. *Kingsville Ind. Sch. Dist. v. Cooper,* 611 F.2d 1109, 1114 (5th Cir. 1980); *Greminger v. Seaborne,* 584 F.2d 275, 279 (8th Cir.1978); *Williams v. City of Valdosta,* 689 F.2d 964, 977 (11th Cir. 1982); *Harkless v. Sweeny Indep. Sch. Dist.,* 427 F.2d 319, 324 (5th Cir. 1970) (holding that back pay awards are diminished by earnings in the interim). The judgment in this case awarded Lopez the amount of back pay he claimed less earnings he testified as receiving between the failure to hire and the lawsuit. This is a proper award, and the Court finds no reason to overturn the jury verdict based on its determination in the case regarding Lopez's First Amendment claims. *Boddie v. City of Columbus, Miss.*, 989 F.2d 745, 752 (5th Cir. 1993).

The defendant, of course, may offer rebuttal evidence to attempt to disprove that political affiliation played a substantial role in the adverse employment action. This relates to a separate but related defense: [E]ven if a plaintiff can demonstrate that his political affiliation was a

substantial factor in the adverse employment action taken against him, there is no constitutional violation if the defendant can show both (i) that it would have taken the same action in any event, and (ii) that it would have taken that action for reasons that are not unconstitutional. *Mt. Healthy,* 429 U.S. at 286-7. This affirmative defense ensures that a constitutional violation will only be found where "political discrimination was the ultimate 'but for' cause of an adverse employment action" because to adopt a view of causation that focuses solely on whether protected conduct played a part in an employment decision would put an "employee in a better position as a result of the exercise of constitutionally protected conduct than he would have occupied [otherwise]. " *Mt. Healthy,* 429 U.S. at 285.

Defendants did not raise this issue in the answer to the complaint, and the Court is unable to find that the defense was specifically raised at any time. The general rule is that affirmative defenses not raised in the answer are ordinarily deemed waived. *See Giles v. Gen. Elec. Co.,* 245 F.3d 474, 491-2 (5th Cir. 2001); *Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004). Nevertheless, the Court will examine this principle out of an abundance of caution.

Trial testimony attempted to establish that only the test scores were considered in determining the candidates for the firefighter position. (Tr. Test.) There was abundant evidence that Holloway told Roberts to fire Curtis when Holloway saw him openly campaigning for the opposing candidate; that Roberts told several people that Justin would not be hired because of his affiliation with the opposing candidate; that the test scores were changed at some point in the hiring procedure; that Holloway was aware the entire Lopez family was involved in campaigning for the opposing candidate; that the certified list is valid for one year or until it is exhausted and another list is certified, but that Justin was still not hired. The Court finds that Lopez effectively

rebutted the position that only the test scores were used when considering Lopez's application to the position, thereby nullifying the *Mt. Healthy* defense, should that defense be found applicable in this case. The Court further concludes that Defendants' motion for new trial based on an alleged failure to establish a First Amendment claim in this case should be denied.

VI.     Plaintiff's Motion for Instatement to the Firefighter Position

Although Lopez contends he should be "reinstated" to the firefighter position because of this law suit, in reality he is asking to be instated to the position, because he never held the position prior to the trial. The Court must determine whether instatement is feasible before considering any other issue. *Hansard v. Pepsi-Cola Metro. Bottling Co.,* 865 F.2d 1461, 1469-70 (5th Cir. 1989); *Julian v. City of Houston, Tex*. 314 F.3d 721, 729 (5th Cir. 2002).

Although instatement is the preferred remedy to avoid future lost earnings, instatement may not be feasible in all cases. *Hadley v. VAM PTS,* 44 F.3d 372, 376 (5th Cir. 1995). The exact position which the successful plaintiff was unlawfully denied or removed from need not be available for instatement to be feasible, but a substantially comparable position must be available for the court to order instatement. *Ray v. Iuka Special Mun. Separate Sch. Dist.,* 51 F.3d 1246, 1254 (5th Cir. 1995). If instatement is not feasible, the court should award the alternative remedy of front pay. *Ray*, 51 F.3d at 1253.

A typical reason given for awarding front pay is where the position sought is no longer available or where personal antagonism between the parties has made instatement infeasible. *Walther v. Lone Star Gas Co.,* 952 F.2d 119, 127 (5th Cir. 1992). In this case, the trial testimony establishes a history of the animosity between the parties which would make instatement infeasible. Antagonism alone, however, cannot bar instatement. *See, e.g., Bueno v. City of*

*Donna,* 714 F.2d 484, 496 (5th Cir. 1983). In this case, there was no evidence presented of any job openings currently available. Instatement is not feasible if the exact or no comparable position is available because it would require the Court to bump an innocent person out of a job to accommodate Plaintiff. *Ray,* 51 F.3d at 1254.

The Court has considered the circumstances surrounding this case and determines that because of the animosity between the parties, both within the fire department and the management of the city, along with the lack of evidence regarding any available position within the department and the necessity of bumping another individual out of a position to accommodate Lopez that instatement is infeasible in this case. *Ray*, 51 F.3d at 1254-5; *see Deloach,* 897 F.2d at 822.

The Court will consider whether an award of front pay is appropriate in this case, since instatement is not feasible. The purpose of front pay is to compensate the plaintiff for lost future wages and benefits. *Burns v. Texas City Refining, Inc.,* 890 F.2d 747, 752 (5th Cir.1989). An award of front pay, although in the form of monetary relief, is essentially an equitable remedy. *Deloach v. Delchamps, Inc.,* 897 F.2d 815, 824 (5th Cir. 1990). The amount of an award, if any, is within the court's discretion. *Reneau v. Wayne Griffin & Sons, Inc.,* 945 F.2d 869, 870 (5th Cir. 1991).

In addition, front pay may be denied or reduced when the employee fails to mitigate damages by seeking other employment. *Hansard,* 865 F.2d at 1470. The Court must determine whether Lopez diligently sought other employment after he was not hired at the Biloxi fire department. *Reneau v. Wayne Griffin & Sons, Inc*. 945 F.2d 869, 870 (5th Cir. 1991). Lopez testified that he was a firefighter at the D'Iberville fire department, but quit that job to campaign

for a mayoral candidate who told Lopez he might be hired with the city if that candidate were successful in his bid for the mayoral position. (Tr. Test.) He worked at a casino for two months, but quit because the smoke in the buildings gave him a headache. (*Id.*) He worked for the month of May at the Biloxi Beach Manor, and was then laid off from May of 2000 until February 2001 when he was hired at D'Iberville. (*Id.*) After he quit the D'Iberville position, he started a video filming self-employment venture and did odd jobs. (*Id.*) Eventually he was hired with Harrison County, where he remained employed until the date of trial. (*Id.*) No further employment information is available beyond the date of the trial of this matter.

Whether an injured person has mitigated his damages requires a factual assessment of the reasonableness of his conduct. *See Pennzoil Producing Co. v. Offshore Express, Inc.,* 943 F.2d 1465, 1476 (5th Cir. 1991). The Court finds that Lopez did not diligently seek other employment and remain gainfully employed between the time of his application to the Biloxi fire department and his employment at Harrison County. The Court further finds that Lopez failed to mitigate his damages and that an award of front pay under these circumstances is not warranted. Accordingly, the Court finds that Lopez's motion for equitable relief in the form of instatement to a position with the Biloxi fire department should be denied.

## Conclusion

For the reasons given above, this Court concludes that Defendants' motion for new trial [99-1], or in the alternative for remittitur on damages, or for judgment as a matter of law should be granted in part and denied in part. The Court finds that the jury's determination that Defendants' violated Lopez's Fourteenth Amendment Due Process rights was in error and that this claim should be dismissed. The remainder of Defendants' motion should be denied for the

reasons discussed above.  The Court further finds that Plaintiff's motion for equitable relief [91-1] should be denied.  A separate judgment in conformity with and incorporating by reference the above Memorandum Opinion shall issue this date.  Each party shall bear their respective costs associated with these motions.

      THIS the 28th day of March, 2006.


                                      *Walter J. Gex III*
                              UNITED STATES SENIOR DISTRICT JUDGE